IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JAMES ELMORE                                                                                    PLAINTIFF

VS.                                      Case No. 04-CV-1062

UNITED STEELWORKERS                                                                    DEFENDANTS
OF AMERICA, et al.

## MEMORANDUM OPINION

This lawsuit involves Plaintiff James Elmore's allegations that Defendants United Steelworkers of America and Local 769L United Steel Workers of America (collectively "the Union") violated their duty of fair representation when they processed his greviance and discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq. Before the Court is the Union's Motion for Summary Judgment. (Doc. 11). Elmore has filed a Response. (Doc. 14). The Union has also filed a Reply (Doc. 17). The Court finds the motion ripe for consideration.

**I.      Background**

In February 2002, Elmore was hired by Cooper Standard Automotive ("Cooper") as a press operator at its El Dorado, Arkansas, plant. Elmore's press had a limit switch that was connected to a computer that monitored the change time of the mold on the press table, which allowed Cooper to monitor Elmore's production. Cooper accused Elmore of overbooking his production on August 29, 2002, August 30, 2002, September 6, 2002, and September 10, 2002. Cooper suspended Elmore and eventually terminated him on October 4, 2002.

The Union was recognized as the exclusive bargaining agent for all production and maintenance employees of Cooper's El Dorado plant and the terms and conditions of Elmore's employment were governed by a collective bargaining agreement. After his suspension and termination, Elmore filed a grievance with the Union pursuant to Step 4 of the Union's Collective Bargaining Agreement, and the Union filed for the arbitration of Elmore's grievance.

Elmore's arbitration was held on the morning of July 15, 2003. Elmore was represented

by Robert LaVenture, who, at the time, was the Subdistrict Director of the Union for Arkansas and Oklahoma.  In his affidavit, LaVenture avers that he has handled several hundred grievances and at least fifty arbitration cases prior to handling Elmore's arbitration.  The Arbitrator at Elmore's hearing was Roger C. Williams.  LaVenture was telephoned on July 14, 2003, by Charlie Buggs, the local union president for Local 769L; LaVenture agreed to represent Elmore and Jimmy Lum, another employee of Cooper, at the arbitration hearing, and LaVenture drove to El Dorado on the morning of July 15, 2003.  When LaVenture arrived in El Dorado he met with the local union officers and the grievant in the first arbitration case, Lum.  During Lum's hearing, Arbitrator Williams tape-recorded the proceedings and took notes, along with LaVenture, and a court reporter was present.

After Lum's hearing, LaVenture discussed Elmore's case with the Local Union Officers, Elmore and Regan McDaniel, the Union's local representative.  During Elmore's arbitration hearing, Elmore and McDaniel testified.  No court reporter was present at Elmore's hearing, but Arbitrator Williams and Cooper tape recorded the testimony and Arbitrator Williams took notes, along with LaVenture.

Following the arbitration hearing, LaVenture and Cooper's attorneys agreed to file post arbitration briefs.  LaVenture agreed to several extensions of time for filing their briefs and allowed the arbitrator extra time to make his decision.  When LaVenture prepared his post arbitration briefs he relied upon his notes, his personal recollection of the witnesses' testimony and a transcript he received from Cooper's attorney.  The transcript LaVenture received from Cooper's attorney did not contain any of Elmore's or McDaniel's testimony.  Eventually, Arbitrator Williams issued a written opinion, upholding Cooper's decision to terminate Elmore.

Elmore then filed this lawsuit against the Union alleging breach of the duty of fair representation and racial discrimination.  The Union has filed for summary judgement on all of Elmore's claims.

**II.     Standard of Review**

The standard of review for summary judgment is familiar and established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); Krenik v. County of Le Sueur, 47 F.3d 953 (8th Cir. 1995).

The Supreme Court has issued the following guidelines to help determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial . . . whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Agristor Leasing v. Farrow, 826 F.2d 372 (8th Cir. 1987); Niagra of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund, 800 F.2d 742, 746 (8th Cir. 1986).

The burden of proof is on the moving party to set forth the basis of its motion. Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002), citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. Id., citing Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The Eight Circuit Court of Appeals, in Scheer Const. Co. v. Greater Huron Development Corp., 700 F.2d 463, 465 (8th Cir. 1983), quoting Burst v. Adolph Coors Co., 650 F.2d 930, 932 (8th Cir. 1981), in a case involving the entry of summary judgment, stated:

> [w]hen a motion for summary judgment is made and supported by affidavits, the party opposing the motion may not rest on the allegations in his pleadings but must resist the motion by setting forth specific facts that raise a genuine issue of fact for trial.

If a plaintiff has the burden of proof at trial on a claim and the defendant has filed a motion for summary judgment, the plaintiff must identify admissible evidence sufficient to make a submissible case at trial. Celotex, at 323-24. If the plaintiff cannot identify such facts, the

defendant is entitled to judgment as a matter of law. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990), quoting Celotex, 477 U.S. at 322).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co.., 475 U.S. at 586. Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. Anderson, 477 U.S. at 248.

### III. Discussion

#### A. No reasonable jury could find that the Union breached their duty of fair representation when they processed Elmore's greviance through arbitration.

A labor union, as the exclusive bargaining agent for the employees it represents, has a duty to represent its members adequately, honestly and in good faith. Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 75 (1991). The duty of fair representation prohibits a labor union from conducting itself in an arbitrary, discriminatory, or bad faith manner, when representing employee members of the bargaining unit in the course of administrating or enforcing the collective bargaining agreement. Beavers v. United Paperworkers Intern. Union, Local 1741, 72 F.3d 97, 100 (8th Cir. 1995). Elmore concedes that he has no evidence that the Union was discriminatory or acted in bad faith, and he focuses his arguments on his allegations that the Union acted in an arbitraty manner when it processed his grievance through arbitration.

Elmore argues that the Union breached the duty of fair representation in seven ways: (1) by failing to properly investigate his claims by having a person with scientific, technical or mechanical knowledge present jusifications for the discrepancies in the computer's monitoring of Elmore's production or to explain in such a manner that would corroborate the production of Elmore; (2) by providing Elmore with an advocate, LaVenture, who was called the evening before the arbitration and was not prepared to present Elmore's case for reinstatement based on technical problems that were an issue in the case; (3) by failing to present to the Arbitrator names of employees that were treated differently than Elmore; (4) by failing to present evidence to the Arbitrator that Elmore was discriminated against on the basis of his race; (5) by requesting additional time to submit post-arbitration briefs; (6) by allowing the Arbitrator to extend the

time to render his decision, and failing to contact Elmore about the extensions; and (7) by mailing a tape of the arbitration to Elmore that did not contain his testimony or the testimony of the other witnesses, and failing to have a court reporter present at the arbitration hearing.

Viewing this evidence in the light most favorable to Elmore, the Court finds summary judgment is appropriate in favor of the Union on Elmore's claim for breach of the duty of fair representation. A labor union's representation is arbitraty only when, "considering all the circumstances at the time of the union's action or inaction the union's behavior is so far outside a wide range of reasonableness as to be irrational." Smith v. United Parcel Service, Inc., 93 F.3d 1066, 1068 (8th Cir. 1996). Mere negligence, poor judgment or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation. Id.

In this lawsuit, the alleged failures of the Union represent, at worst, negligent behavior. However, no reasonable jury could find that the Union's actions were evidence of a reckless disregard or perfunctory handling of his grievance. Elmore has also failed to show how the Union's failure would have compelled a different result in his arbitration hearing. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554 (1976)("where the union actually utilizes the grievance and arbitration procedure on behalf of the employee, the focus is no longer on the erroneous for the union's failure to act but on whether, contrary to the arbitrator's decision . . . there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings.") Further, a union representative is not expected to perform as a lawyer might in the grievance-arbitration process. Beavers, 72 F.3d at 100. Accordingly, the Court grants summary judgment in favor of the Union on Elmore's duty of fair representation claims.

B.  **Elmore's Title VII Racial Discrimination cannot survive summary judgment**.

Title VII prohibits labor organizations for discriminating against their members on the basis of race. Jacobs v. United Steelworkers of America, 51 Fed. Appx., 184, 185 (8th Cir. 2002). Elmore's Title VII claim must fail because he has failed to come forward with any evidence suggesting that similarly situated employees were treated differently by the Union

during their arbitration or other evidence that suggests that discrimination motivated the Union's inadequate representation.

Elmore argues that a white employee, Robert Murphee, was reinstated after overbooking his production, and the Union discriminated against Elmore by failing to present this evidence at his arbitration hearing. Apparently, Elmore is asking this Court to infer that the Union treated Murphee more favorably at his arbitration hearing, but Elmore has presented no evidence to the Court to support this claim. The Court finds it takes a bit of a logical stretch to infer that somehow this demonstrates a discriminatory motive on the part of the Union. If anything, it might suggest a discriminatory motive on the part of Cooper, but Cooper is not a party to this lawsuit. In fact, the Summary Judgment evidence shows, in Attachment E, to Elmore's Post Arbitration brief, that LaVenture argued to Arbitrator Williams, "the Company stated they had a zero tolerance for intentional over reporting as opposed to accidental over reporting . . . there were employees in the past that had been discharged for similar offenses, over reporting, and had later returned to work." Summary judgment is appropriate for Elmore's Title VII claims.

### IV. Conclusion

Upon consideration, for the foregoing reasons, the Court finds the Motion for Summary Judgment should be and hereby is **granted** and this lawsuit is hereby **dismissed with prejudice**. A judgment of even date, consistent with this Opinion, will issue.

**IT IS SO ORDERED** this 31st day of August, 2005.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Judge